18 P.3d 227

**Scot EVANS and Sandra Evans, husband and wife, Plaintiffs–Appellants,**

v.

**STATE of Idaho, d/b/a Lava Hot Springs Foundations, Defendant–Respondent.**

No. 25473.

Court of Appeals of Idaho.

Jan. 26, 2001.

Ling, Nielsen Robinson, Rupert, for appellant. Brent T. Robinson argued.

Hon. Alan G. Lance, Attorney General, Boise, and Racine, Olson, Nye, Budge & Bailey, Special Deputy Attorney General, Pocatello, for respondent. John B. Ingelstrom argued.

PERRY, Judge.

Scot Evans and Sandra Evans appeal from a judgment in favor of the State of Idaho, d/b/a Lava Hot Springs Foundations, which was entered following a jury verdict. The Evanses also appeal from the district court's denial of their motion for judgment notwithstanding the verdict and their motion for new trial. Lastly, the Evanses appeal from the district court's award to the state of certain discretionary costs. We affirm in part, reverse in part, and remand for further proceedings.

## I.

## BACKGROUND

In August 1994, Scot Evans and Sandra Evans visited the Lava Hot Springs swimming facility. The swimming facility included three Olympic diving platforms. The highest diving platform rose ten meters above the water surface. Sandra decided to jump from the 10–meter platform. She climbed the ladder and jumped feet first. During her descent, Sandra raised her legs,

hit the water in a sitting position, and sustained injuries.

In August 1995, the Evanses filed a complaint against the State of Idaho, d/b/a Lava Hot Springs Foundations. The Evanses alleged that the state was negligent in failing to warn Sandra of the risk associated with jumping from the 10–meter platform and in failing to properly supervise patrons jumping from the platform. The Evanses alleged that the state's negligence was the proximate cause of Sandra's injuries. The state filed an answer, asserting that it had not been negligent and, in the alternative, that Sandra's damages were caused by her own negligence. At the conclusion of trial, a jury found that the state was not negligent. The Evanses filed a motion for judgment notwithstanding the verdict and a motion for new trial. Both motions were denied by the district court. The district court awarded costs to the state as a matter of right in the amount of $4,993.36 and discretionary costs in the amount of $19,656.98. The Evanses appeal.

## II.

## ANALYSIS

### A. Admission of Evidence at Trial

■■■ On appeal, the Evanses argue that the district court abused its discretion in admitting certain evidence at trial. A determination of whether proffered evidence is admissible rests within the sound discretion of the trial court. *Mac Tools, Inc. v. Griffin,* 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994); *Nettleton v. Thompson,* 117 Idaho 308, 312, 787 P.2d 294, 298 (Ct.App.1990). On appeal, we will not disturb the trial court's decision to admit evidence absent an abuse of discretion. *Nettleton,* 117 Idaho at 312, 787 P.2d at 298.

### 1. Dr. Knoebel's Testimony

■■■ The Evanses argue that the district court erred in admitting the testimony of Dr. Knoebel, an expert retained by the state, that Sandra's continuing pain was a product of psychological problems. A trial court has broad discretion in admitting scientific evidence. *Hanks v. Sawtelle Rentals, Inc.,* 133 Idaho 199, 204, 984 P.2d 122, 127 (1999). Its decision will only be disturbed on appeal when there has been a clear abuse of that discretion. *Id.* In the case of an incorrect ruling regarding the admission of evidence, a new trial is merited only if the error affects a substantial right of one of the parties. I.R.C.P. 61; *Highland Enterprises, Inc. v. Barker,* 133 Idaho 330, 345, 986 P.2d 996, 1011 (1999).

In the instant case, the jury found that there was no negligence on the part of the state which was a proximate cause of Sandra's accident. As a result, the jury did not reach the question of damages. Because Dr. Knoebel's testimony focused exclusively upon the nature of Sandra's alleged damages and not upon the issue of negligence, the admission of Dr. Knoebel's testimony could not have affected the jury's verdict. Consequently, the admission of Dr. Knoebel's testimony did not affect the substantial rights of the Evanses and may not serve as grounds for a new trial under I.R.C.P. 59(a)(7).

### 2. Infrequency or lack of prior accidents

■■■ The Evanses also argue that the district court erred in allowing the admission of statistical evidence of the infrequency of prior accidents occurring when patrons jumped from the 10–meter platform at the Lava Hot Springs swimming facility. The Evanses contend that the evidence was irrelevant. In response, the state contends that they were properly allowed to introduce the evidence because the district court had allowed the Evanses to introduce evidence of prior accidents.[1]

1. The state also contends that the Evanses failed to object at trial to the admission of the evidence and that the Evanses therefore failed to preserve their argument for appellate review. A review of the record reveals that the Evanses filed a pretrial motion in limine objecting to the state's use of evidence regarding the infrequency or lack of

prior accidents at the Lava Hot Springs swimming facility. Because the district court denied the Evanses' motion in limine, the Evanses were not required to renew their objection at trial in order to preserve the issue for appellate review. *See State v. Hester,* 114 Idaho 688, 700, 760 P.2d

Idaho Rule of Evidence 402 provides that all "relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state." Evidence of the lack of prior accidents may be relevant to show: "(1) absence of the defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger." MCCORMICK ON EVIDENCE, Vol. 1, § 200, at 710 (5th ed.1999) (footnotes omitted). Furthermore, evidence of the lack of prior accidents may be admitted in order to provide context to previously admitted evidence of prior accidents:

> One might think that if proof of similar accidents is admissible in the judge's discretion to show that a particular condition or defect exists, or that injury sued for was caused in a certain way, or that a situation is dangerous, or that defendant knew or should have known of the danger, then evidence of the absence of accidents during a period of similar exposure and experience likewise would be receivable to show that these facts do not exist in the case at bar. Indeed, it would seem perverse to tell a jury that one or two persons besides the plaintiff tripped on the defendant's stairwell while withholding from them the further information that another thousand persons descended the same stair without incident.

MCCORMICK ON EVIDENCE, Vol. 1, § 200, at 708 (footnote omitted). Admitting evidence of the lack of prior accidents after evidence of prior accidents has been admitted serves to furnish the means of applying to the matter the practical test of common experience. *McDonald's Corporation v. Grissom*, 402 So.2d 953, 955 (Ala.1981). A knowledge of the experience of others who were, in like manner with the plaintiff, brought into contact with the alleged defective structure, may enable the jury to weigh all the evidence before them in the light of the rule that like

causes operating under like conditions produce like results. *Id.*

In the instant case, the district court allowed the Evanses to introduce, over the state's objection, evidence of prior accidents which occurred when people jumped from the 10-meter platform. The evidence showed that there had been four or five prior accidents. The district court admitted the evidence on the ground that it was relevant to the issue of whether the state had notice of a dangerous condition.[2] Later during the trial, the state sought to introduce statistical evidence tending to show that the number of prior accidents was extremely low when compared to the total number of patrons that visited the swimming facility and jumped from the 10-meter platform. The evidence of the lack of prior accidents provides context to the evidence of prior accidents introduced by Evanses. Furthermore, the statistical evidence regarding the lack of prior accidents is relevant to the questions of whether a dangerous condition existed at the Lava Hot Springs swimming facility and, in the alternative, whether the state had notice of the dangerous condition.

Notwithstanding its relevance, evidence of the lack of prior accidents "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. The essential nature of evidence of the lack of prior accidents is different from evidence of the existence of prior accidents:

> It is harder to prove that something did not happen than to prove that it did happen. When a witness testifies that he knows of no prior accidents, there are two possible explanations. The first is that there have been no prior accidents; the second is that there have been prior accidents but the witness does not know about them ... The response of most courts to this problem has been that testimony that a witness did not see an event (knows of no

27, 39 (1988); *Davidson v. Beco Corp.*, 114 Idaho 107, 108 n. 1, 753 P.2d 1253, 1254 n. 1 (1987).

**2.** The admission of the evidence of prior accidents is not challenged on appeal by the state.

prior accidents) "has, in and of itself no probative force sufficient to prove that the event did not occur." Generally, courts hold that such negative evidence is inadmissible, unless testimony that the witness did not see the event or does not know of it is coupled with further evidence that the witness was in such a position or has sources of knowledge that if the event had occurred, he would have seen it or would have known about it.

*Jones v. Pak–Mor Mfg. Co.*, 145 Ariz. 121, 126, 700 P.2d 819, 824 (1985) (en banc) (citations omitted). Evidence of the infrequency or lack of prior accidents may also be excluded if the circumstances under which no prior accident occurred is not substantially similar to the circumstances under which the challenged accident did occur. *See id.* at 825; MCCORMICK ON EVIDENCE, Vol. 1, § 200, at 709. When the experience sought to be proved is so extensive as to be sure to include an adequate number of substantially similar situations, the similarity requirement should be considered satisfied. *Mobbs v. Central Vermont Ry., Inc.*, 155 Vt. 210, 227, 583 A.2d 566, 576 (1990); *Jones*, 700 P.2d at 825. MCCORMICK ON EVIDENCE, Vol. 1, § 200, at 709.

The manager of the Lava Hot Springs swimming facility testified that only four patrons had been injured when they jumped from the 10–meter platform. The manager's testimony that he knew of no other injuries occurring from the 10–meter platform was coupled with his testimony that he was in a position to know of other injuries if they had occurred. There were three to five lifeguards stationed around the swimming pool at all times. These lifeguards vigilantly surveyed the patrons as they swam in the pool and jumped from the diving platforms. It was standard policy for the lifeguards to file a report every time they observed an injury to a patron of the swimming facility. If there had been more than four injuries from the 10–meter platform, it is apparent from the evidence presented at trial that reports would have been filed and the manager of the swimming facility would have been made aware of any additional injuries.

Furthermore, the Lava Hot Springs swimming facility and diving platforms were constructed in 1969. Approximately five years later, a sign was placed at the bottom of the 10–meter platform, which advised patrons to use extreme caution while jumping from the platform. The evidence introduced at trial revealed that over 2 million patrons visited the swimming facility from 1969–1994 and that 235,057 patrons visited the swimming facility from 1991–1994. By the estimation of two lifeguards at the swimming facility, approximately 30 percent of these patrons jumped from the 10–meter platform. Each patron who jumped from the 10–meter platform faced the same 33–foot drop to the water surface. Thus, the evidence presented at trial reveals that the circumstances under which only four patrons had been previously injured were substantially similar to the circumstances under which Sandra sustained injuries.

Based upon the totality of the evidence presented in the instant case, we cannot say that the probative value of the evidence of the lack of prior accidents occurring on jumps from the 10–meter platform was substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* I.R.E. 403. Nor can we say that its probative value was substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See id.* Consequently, we hold that the district court did not abuse its discretion in allowing the admission of statistical evidence regarding the lack of prior accidents. As a result, the admission of the statistical evidence cannot serve as grounds for a new trial under I.R.C.P. 59(a)(7).

## B. Alleged Misconduct at Trial

On appeal, the Evanses argue that the district court erred in "not finding defense counsel's misconduct" during trial. The Evanses contend that the state made improper remarks during its opening statement to the jury and asked improper questions of two witnesses.

### 1. Opening Statement

 The Evanses argue that the state made improper remarks during its opening statement to the jury. However, the record does not contain a transcript of the state's opening statement. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct.App.1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.*

### 2. Testimony from Evelyne Schow

 The Evanses also argue that the state improperly asked Evelyne Schow whether she accepted responsibility for an injury she had previously sustained while jumping from the 10–meter platform at the Lava Hot Springs swimming facility. Prior to trial, the state filed a motion in limine objecting to the admission of Schow's testimony. After consideration of the state's objection, the district court ordered that Schow would be allowed to testify that she sustained injuries while jumping from the 10–meter platform and that she reported the injuries to the management of the Lava Hot Springs swimming facility. However, the district court ordered that Schow would be prohibited from testifying about her trial against the state or the jury's verdict apportioning negligence between Schow and the state.[3] The Evanses contend that the state's questioning of Schow regarding whether she accepted responsibility for her injury violated the district court's pre-trial order.

 It is well established in Idaho that where the trial court has unqualifiedly ruled on the admissiblility of evidence prior to trial in response to a motion in limine, no further objection at trial is necessary to preserve the issue for appellate review. *See State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988); *Davidson v. Beco Corp.*, 114 Idaho 107, 108 n. 1, 753 P.2d 1253, 1254 n. 1 (1987). In the instant case, the state filed a motion in limine objecting to the admission of Schow's testimony. The district court denied in part

and granted in part the state's motion. Thus, the state did not need to renew the objection at trial in order to preserve its objection to Schow's testimony. However, the record reveals that the Evanses did not object prior to trial to the admission of Schow's testimony. Because the Evanses had not previously objected to Schow's testimony, the Evanses were required to object at trial to any questioning by the state that they believed was inappropriate. The trial transcript reveals that the Evanses did not object to the state's question of Schow regarding whether she accepted responsibility for her injuries. As a result, we conclude that the Evanses failed to preserve their argument for appellate review.

### 3. Testimony from Martin Greenlaw

 Prior to trial, the district court ordered the parties to refrain from introducing evidence regarding Schow's prior trial and the verdict apportioning negligence to Schow for her injuries sustained after jumping from the 10–meter platform at the Lava Hot Springs swimming facility. At trial during cross-examination, the state asked Martin Greenlaw, the Evanses' expert on aquatic safety, whether he had ever consulted on a prior case involving a feet-first recreational jump from a 10–meter platform. On appeal, the Evanses argue that this question was a violation of the district court's pre-trial order because Greenlaw had consulted on the Schow case. The Evanses contend that the question amounted to attorney misconduct for which the district court should have given a curative instruction.

Given the sequence of the testimony from Greenlaw, we do not agree that there was any attorney misconduct. The issue of whether Greenlaw had previously consulted on a 10–meter platform case was first raised by Greenlaw in response to a question posed by the Evanses' counsel on direct examination:

> [Evanses] Mr. Greenlaw, how many previous cases have you consulted on that involved the issue similar to this case?

---

**3.** Although the record is unclear, it appears that the jury in that case apportioned greater negligence to Schow than to the state, thus precluding any monetary recovery.

[Greenlaw] Well, in diving or jumping type cases, it's, it's been a number, probably in excess of seventy-five or a hundred. But I have to clarify that for the Court and for the jury. *In terms of cases involving a 10-meter platform, this is my first.*

(Emphasis added.). Later, the state questioned Greenlaw on cross-examination about his prior experience consulting on 10-meter platform cases. Because the state did not question Greenlaw about his prior experience until after the issue had been raised by the Evanses on direct examination, we conclude that the question did not amount to attorney misconduct. *See Spence v. Howell,* 126 Idaho 763, 773, 890 P.2d 714, 724 (1995).

In response to the state's question, Greenlaw again responded that he had not previously consulted on a case involving a jump from a 10-meter diving platform. The trial transcript reveals that shortly thereafter a discussion was held at the bench between the district court, the parties, and Greenlaw. At the conclusion of the discussion, the district court allowed the Evanses to reopen their direct examination of Greenlaw. In response to the Evanses' questioning, Greenlaw admitted that he had consulted on a prior case involving a jump from the 10-meter platform at the Lava Hot Springs swimming facility. On appeal, the Evanses contend that the district court's instruction to reopen direct examination prejudiced their case because the jury was left to believe that Greenlaw was trying to hide evidence. However, the discussion at the bench was conducted off the record. Without a record of the discussion, it is impossible to determine how the district court arrived at its decision to reopen direct examination. It is the responsibility of the appellant to make and preserve for appeal a sufficient record to substantiate his or her claims of error. *Powell v. Sellers,* 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct.App.1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.*

### C. Motion for Judgment Notwithstanding the Verdict

■■■■ On appeal, the Evanses argue that the district court erred in denying their motion for judgment notwithstanding the verdict or, in the alternative, their motion for a new trial. In considering the district court's denial a motion for judgment notwithstanding the verdict (J.N.O.V.), this Court is to review the record of the trial court and determine whether, as a matter of law, there was sufficient evidence upon which reasonable jurors could return a verdict in favor of the plaintiffs. *Beco Const. Co., Inc. v. Harper Contracting, Inc.,* 130 Idaho 4, 8, 936 P.2d 202, 206 (Ct.App.1997). If a verdict can be supported under any reasonable view of the evidence, a motion for J.N.O.V. must be denied. *Litchfield v. Nelson,* 122 Idaho 416, 420, 835 P.2d 651, 655 (Ct.App.1992). If an alternative motion for new trial is made with the J.N.O.V. motion, the trial court must rule on both motions separately. *Beco,* 130 Idaho at 8, 936 P.2d at 206. In the instant case, the district court analyzed the issues separately for each motion and recognized the relevant standards and legal principles applicable to a motion for J.N.O.V. After a thorough review of the record, we conclude that there was sufficient evidence upon which a reasonable jury could return a verdict in favor of the state. Consequently, the district court did not err in denying the Evanses' motion for J.N.O.V.

### D. Motion for New Trial

■■■■ The Evanses also argue that the district court erred in denying their motion for new trial. On appeal, we review a trial court's decision to grant or deny a new trial for an abuse of discretion, and we will not disturb that decision absent a manifest abuse of this discretion. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 497-98, 943 P.2d 912, 923-24 (1997); *Burggraf v. Chaffin,* 121 Idaho 171, 173, 823 P.2d 775, 777 (1991).

■■■■ First, the Evanses assert that their motion for new trial should have been granted on the ground of insufficient evidence to justify the verdict pursuant to I.R.C.P. 59(a)(6). When a motion for a new trial is based on the ground of insufficient evidence to justify the verdict, the trial court must weigh the evidence presented at trial and grant the motion only where the verdict

is not in accord with its assessment of the clear weight of the evidence. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 45, 896 P.2d 949, 953 (1995). In ruling on the motion, the trial court must independently assess the credibility of the witnesses. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Quick v. Crane,* 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986). The trial court is not required to construe the evidence in favor of the jury verdict. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Quick,* 111 Idaho at 767, 727 P.2d at 1195. To grant a new trial, the court must apply a two-prong test: (1) the court must find that the verdict is against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict; and (2) the court must conclude that a retrial would produce a different result. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990). After a thorough review of the record, we cannot say that the district court abused its discretion in concluding that the jury's verdict was not against the clear weight of the evidence. The district court therefore did not abuse its discretion in denying the Evanses' Rule 59(a)(6) motion for new trial.

■ Second, the Evanses assert that their motion for new trial should have been granted on the ground of inadequate damages pursuant to I.R.C.P. 59(a)(5). However, the jury did not award damages because it found that the state was not negligent. As a result, the Evanses' assertion that the damages were inadequate is meritless. The district court therefore did not abuse its discretion in denying the Evanses' Rule 59(a)(5) motion for new trial.

■ Third, the Evanses assert that their motion for new trial should have been granted on the ground of irregularity in the trial proceedings pursuant to I.R.C.P. 59(a)(1) and on the ground of accident or surprise pursuant to I.R.C.P. 59(a)(3). This portion of the Evanses' motion was based upon its argument that the state's attorney made improper statements during closing argument and that the state improperly failed to answer discovery requests. The district court concluded that the Evanses' motion was procedurally deficient insofar as it was based upon Rule 59(a)(1) and Rule 59(a)(3) because their motion was not accompanied by an affidavit stating in detail the facts relied upon in support of the motions. *See* Rule 59(a)(7). Although the Evanses argue that the district court inadequately considered the merits of their motion, they do not challenge the district court's conclusion that their motion was procedurally deficient. Consequently, we conclude that the district court did not abuse its discretion in denying the Evanses' motion for new trial.

## E. Discretionary Costs

■ On appeal, the Evanses argue that the district court erred in awarding discretionary costs to the state pursuant to I.R.C.P. 54(d)(1)(D). The district court awarded $3,250 in discretionary costs for the hiring of Dr. Knoebel, the state's medical expert. The district court also awarded $13,829.37 in discretionary costs for the hiring of Larry Paulick, the state's swimming pool expert. These awards were in addition to the district court's award of $500 in costs as a matter of right for each expert.[4]

■ The determination of costs is left to the discretion of the district court. *Bingham v. Montane Resource Assoc.,* 133 Idaho 420, 425, 987 P.2d 1035, 1040 (1999). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

---

4. Although the district court awarded numerous other costs, both discretionary and as a matter of right, the Evanses only challenge on appeal the award of discretionary costs for the expert fees incurred in the hiring of Dr. Knoebel and Paulick.

Except when otherwise limited by the Idaho Rules of Civil Procedure, costs shall be awarded as a matter of right to the prevailing party. I.R.C.P. 54(d)(1)(A). Costs which are awarded as a matter of right include reasonable expert witness fees "for an expert who testifies at a deposition or at a trial of an action not to exceed the sum of $500 for each expert witness for all appearances." Rule 54(d)(1)(C)(8). An award greater than $500 for expert witness fees may be granted as discretionary costs "upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." Rule 54(d)(1)(D). Upon objection to claimed discretionary costs, the trial court shall make express findings as to why such discretionary costs should or should not be allowed. *Id.* The district court must make express findings that the discretionary costs are necessary, exceptional, and reasonably incurred. *Bingham*, 133 Idaho at 425, 987 P.2d at 1040. If such findings are made, I.R.C.P. 54(d)(1)(D) recognizes that it is in the interest of justice that such costs be assessed against the adverse party. *Westfall v. Caterpillar, Inc.*, 120 Idaho 918, 925, 821 P.2d 973, 980 (1991).

We note that the Idaho Supreme Court has expressly rejected the argument that expert witness fees are never "exceptional" under Rule 54(d)(1)(D). *See Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 186–87, 983 P.2d 834, 840–41 (1999). The Idaho Supreme Court and this Court have, on a number of occasions, affirmed an award of discretionary costs for the expense of expert witness fees. *See Wooley Trust*, 133 Idaho at 187, 983 P.2d at 841; *Zimmerman v. Volkswagen of America, Inc.*, 128 Idaho 851, 858, 920 P.2d 67, 74 (1996); *Beale v. Speck*, 127 Idaho 521, 537, 903 P.2d 110, 126 (Ct.App.1995); *Bodine v. Bodine*, 114 Idaho 163, 167–68, 754 P.2d 1200, 1204–05 (Ct.App.1988). *But see Fish v. Smith*, 131 Idaho 492, 494, 960 P.2d 175, 177 (1998) (Supreme Court affirmed the district court's denial of discretionary costs for expert fees where the district court found such costs common in a personal injury case and where such experts routinely testify).

In its order granting discretionary costs to the state, the district court specifically acknowledged that it was exercising its discretion in reviewing the state's request for discretionary costs. The district court further recognized that in exercising its discretion in this matter, it must determine whether the costs asserted were necessary, exceptional, and reasonably incurred. This demonstrates that the district court understood and acted within the boundaries of its discretion and consistent with the applicable legal standards.

In awarding Paulick's fee, the district court concluded that the fee was necessary, exceptional, and reasonably incurred because Paulick's testimony "was instrumental, as he was examined at some length by both" parties. However, while a finding that an expert's testimony was "instrumental" may satisfy the Rule 54(d)(1)(D) requirement that the cost was necessary, it does not address whether the cost was exceptional and reasonably incurred. In the absence of further clarification, it is impossible for this Court to determine whether the district court reached its decision in regard to Paulick's fee by an exercise of reason. *See Perry v. Magic Valley Regional Medical Ctr.*, 134 Idaho 46, 60, 995 P.2d 816, 830 (2000).

In awarding Dr. Knoebel's fee, the district court failed to provide any explanation why it concluded that the fee was necessary, exceptional, and reasonably incurred. As a result, it is also impossible for this Court to determine whether the district court reached its decision in regard to Dr. Knoebel's fee by an exercise of reason. *See id.*

Because the district court failed to adequately explain the basis for its conclusion that the testimony of Paulick and Dr. Knoebel was necessary, exceptional, and reasonably incurred, we remand the matter to the district court for specific findings concerning the discretionary costs challenged by the Evanses in this appeal.

### III.

### CONCLUSION

The district court did not abuse its discretion in admitting at trial the testimony of Dr.

Knoebel and the statistical evidence regarding the infrequency of prior accidents at the Lava Hot Springs swimming facility. The Evanses have failed to show any misconduct by the state in its opening statement or in its questioning of Schow and Greenlaw. The district court did not err in denying the Evanses' motion for J.N.O.V. or in denying the Evanses' motion for new trial. In awarding discretionary costs to the state, the district court failed to adequately state the reasons that the costs incurred in hiring Paulick and Dr. Knoebel were necessary, exceptional, and reasonable. Therefore, the district court's award of those costs is vacated and this case is remanded for proceedings consistent with this opinion.

Costs, but not attorney fees, are awarded to respondent on appeal.

SCHWARTZMAN, C.J., and LANSING, J., concur.